PHILIP E. LANE, Plaintiff-Appellant, v. MICHAEL W. KALCHEIM *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—08—2119

Opinion filed August 19, 2009.

Grasso, Bass & Williams, P.C., of Burr Ridge (Gary A. Grasso and Adam R. Bowers, of counsel), for appellant.

Flaherty & Youngerman, P.C., of Chicago (Michael J. Flaherty and C. Corey S. Berman, of counsel), for appellees.

JUSTICE QUINN delivered the opinion of the court:

Plaintiff, Philip E. Lane, appeals from an order of the circuit court of Cook County granting defendants' motion to dismiss his legal malpractice action pursuant to section 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—619 (West 2006)) based on the doctrine of *res judicata*. On appeal, plaintiff contends that the trial court erred in finding that all three requirements of *res judicata*, as delineated by our supreme court in *Hudson v. City of Chicago*, 228 Ill. 2d 462 (2008), had been satisfied. For the reasons set forth below, we affirm the trial court's order.

## I. BACKGROUND

On November 18, 1983, the plaintiff and his fiancée, Linda Kleiss (Kleiss-Lane), executed an antenuptial agreement in contemplation of their upcoming marriage, which occurred on December 3, 1983. A little over 10 years later, in July 1993, Kleiss-Lane filed a petition for

dissolution of marriage in the circuit court of Lake County, Illinois. In July 1994, plaintiff and Kleiss-Lane purportedly reached an oral settlement agreement on property distribution. Shortly thereafter, in September 1994, plaintiff retained defendants, Michael W. Kalcheim, Michael W. Kalcheim, P.C., Michael J. Berger, Michael J. Berger, P.C., Barry A. Schatz, Barry A. Schatz, P.C., and Kalcheim, Schatz & Berger, P.C. (hereinafter Kalcheim), to represent him in his marital dissolution case. Plaintiff contends that he informed Kalcheim of the oral settlement agreement that he and Kleiss-Lane had reached and expected Kalcheim to plead for enforcement of that agreement in the dissolution case. However, Kalcheim never introduced evidence of the settlement agreement.

In 1995, Kleiss-Lane filed a motion for declaratory relief in the dissolution case seeking a judgment declaring the antenuptial agreement unenforceable. After a hearing, the trial court denied the motion and subsequently entered a judgment for dissolution of marriage and an order disposing of the parties' property in accordance with the antenuptial agreement. Kleiss-Lane appealed those rulings and on April 1, 1998, the appellate court issued a Rule 23 order reversing the trial court. *In re Marriage of Lane*, No. 2—96—1453 (1998) (unpublished order under Supreme Court Rule 23). Plaintiff was represented by Kalcheim in this appeal. The appellate court stated that when parties are engaged to be married before an antenuptial agreement is signed, a confidential relationship exists and if the division of assets disproportionately favors the husband, the presumption is raised that the husband intentionally concealed his assets, and the burden shifts to the husband to prove that the wife had full knowledge of the husband's property. The appellate court found that because the record did not show that Kleiss-Lane had full knowledge of plaintiff's property when she signed the antenuptial agreement, that agreement was not enforceable and remanded the cause to the trial court. The record does not contain any facts regarding any further proceedings in the Lake County dissolution case.

In February 1997, while the appeal on the antenuptial agreement was pending, plaintiff filed a complaint against Kleiss-Lane in the circuit court of Cook County to enforce the July 1994 oral settlement agreement. Plaintiff was not represented by Kalcheim in that suit. Kleiss-Lane filed a motion to dismiss on *res judicata* grounds, which the trial court granted on July 25, 1997, finding that the claim could have been brought in the Lake County dissolution of marriage proceeding.

On February 4, 2000, plaintiff filed a three-count complaint in the circuit court of Cook County against Kalcheim for legal malpractice

(*Lane I*). Count I alleged that Kalcheim was negligent in failing to plead and prove the oral settlement agreement in the marital dissolution proceeding. Count II alleged that Kalcheim was negligent in failing to properly research the law and advise plaintiff that he bore the burden of proving the validity of the antenuptial agreement. Count III alleged that Kalcheim failed to adequately prepare plaintiff to testify at the declaratory judgment hearing so that plaintiff could describe the nature and extent of financial details he provided to Kleiss-Lane before the execution of the antenuptial agreement.

In August 2000, Kalcheim moved to dismiss plaintiff's complaint in *Lane I* asserting that count I was barred by the statute of limitations and that counts II and III were barred by the doctrine of unclean hands. On March 13, 2001, the trial court dismissed count I with prejudice but let counts II and III stand and ordered defendants to file a responsive pleading to those counts. Nearly two years later, on January 8, 2003, plaintiff voluntarily dismissed counts II and III of *Lane I* pursuant to section 2—1009 of the Illinois Code of Civil Procedure. 735 ILCS 5/2—1009 (West 2006).

On December 22, 2003, plaintiff filed a new single-count complaint (*Lane II*) against defendants alleging that they were negligent in failing to research the burden of proof required to rebut the legal presumption of antenuptial agreements, failing to adequately prepare him to testify regarding the nature and extent of the financial information he disclosed to Kleiss-Lane before execution of the antenuptial agreement, and failing to meet the burden of proof necessary to obtain a favorable ruling on Kleiss-Lane's motion for declaratory relief regarding the antenuptial agreement.

On April 14, 2004, defendants filed a motion to dismiss *Lane II* on *res judicata* grounds. On October 14, 2004, the trial court denied the motion but permitted defendants to file a brief requesting that the issue be certified pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308). On October 28, 2004, defendants filed their motion to certify questions for review, which the trial court granted on January 14, 2005. This court denied defendants' petition for leave to appeal on February 25, 2005. Meanwhile, *Lane II* was placed back on the trial calendar.

On January 25, 2008, the Illinois Supreme Court filed its opinion in *Hudson v. City of Chicago*, 228 Ill. 2d 462 (2008), in which it held that the appellate court correctly relied on *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325 (1996), as controlling law to uphold the trial court's dismissal of plaintiff's case on *res judicata* grounds. The *Hudson* court noted that three requirements must be met for *res judicata* to apply: (1) a final judgment on the merits rendered by a court of competent

jurisdiction; (2) an identity of causes of action; and (3) an identity of parties or their privies. *Hudson,* 228 Ill. 2d at 470. Only the first requirement was at issue in *Hudson,* and relying on *Rein,* the court found that it was satisfied because adjudication on the merits of a negligence count constituted adjudication on the merits of a willful and wanton misconduct count. The court also found that none of the exceptions to the rule against claim-splitting applied and affirmed the appellate court. *Hudson,* 228 Ill. 2d at 484.

Based on the *Hudson* decision, defendants filed a renewed motion to dismiss pursuant to section 2—619 of the Illinois Code of Civil Procedure (735 ILCS 5/2—619 (West 2006)), arguing that the action was barred by *res judicata.* On June 2, 2008, the circuit court granted the motion, and on June 3, 2008, the judge reentered her oral ruling with a court reporter present, stating that "[u]sing the analysis of the *Hudson* court, this court concludes that all three elements of *res judicata* have been satisfied, specifically including identity of cause of action, and that the plaintiff's absolute right to take a voluntary dismissal does not mandate a different conclusion." Plaintiff filed a motion to reconsider, which the trial court denied. Plaintiff now appeals.

## II. ANALYSIS

### A. Standard of Review

This court's standard of review of a trial court's grant of a motion to dismiss pursuant to section 2—619 is *de novo. Parks v. Kownacki,* 193 Ill. 2d 164, 175 (2000). When ruling on a section 2—619 motion to dismiss, a court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party. *In re Chicago Flood Litigation,* 176 Ill. 2d 179, 189 (1997). The motion should be granted only if the plaintiff can prove no set of facts that would support a cause of action. *Chicago Teacher's Union, Local 1 v. Board of Education,* 189 Ill. 2d 200, 206 (2000).

### B. *Res Judicata*

■ Under the doctrine of *res judicata,* a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *Rein v. David A. Noyes & Co.,* 172 Ill. 2d 325, 334 (1996). *Res judicata* applies to bar issues that were actually decided in the first action, as well as matters that could have been decided. *LaSalle National Bank v. County Board of Trustees,* 61 Ill. 2d 524, 529 (1975). As noted above, three requirements must be satisfied for the doctrine of *res judicata* to apply: (1) a final judgment on the

merits rendered by a court of competent jurisdiction; (2) an identity of causes of action; and (3) an identity of the parties or their privies. *Hudson*, 228 Ill. 2d at 470.

Plaintiff does not dispute that the first and third requirements are met here but contends, however, that there was no identity of causes of action between *Lane I* and *Lane II*, because they involved two separate underlying cases—a failure to enforce the 1994 settlement agreement and a failure to present evidence that would have supported the validation of the antenuptial agreement. Plaintiff contends that the trial court erred in holding that, as plaintiff's claims against Kalcheim arose out of Kalcheim's representation of plaintiff in a single divorce action, the claims constituted an identity of causes of action. Plaintiff argues that the two claims were entirely different in substance and in time, and therefore, the court should have found that there was no identity of causes of action and denied the motion to dismiss.

Before determining whether the trial court erred in finding that the *res judicata* requirements were met in this case, we first address plaintiff's contention that the trial court erred in stating that *Hudson* modified existing precedent concerning *res judicata* and, as a result, incorrectly applied the *Hudson* decision in granting defendants' motion to dismiss.

*Hudson* involved the death of a five-year-old boy who was provided emergency services by the Chicago fire department following an acute asthma attack. The boy's mother had called 911 and instead of sending an ambulance, the dispatcher sent a fire engine that was not equipped with the proper life support or medical equipment. The plaintiffs originally filed a wrongful death action consisting of a negligence count and a willful and wanton misconduct count (*Hudson I*). The circuit court dismissed the negligence count with prejudice, finding that the defendants were immune from ordinary negligence claims under the Emergency Medical Services (EMS) Systems Act (210 ILCS 50/3.150 (West 2000)) and continued the action as to the willful and wanton misconduct count. The plaintiffs continued to litigate that count for three years until their attorney died, at which time the attorney's daughter, appearing as substitute counsel, voluntarily dismissed the lawsuit pursuant to section 2—1009 of the Code in order to properly prepare for trial. Plaintiffs then refiled, pleading only the willful and wanton misconduct count (*Hudson II*). Defendants moved to dismiss *Hudson II* pursuant to section 2—619 of the Code (735 ILCS 5/2—619 (West 2006)), claiming that it was barred by *res judicata*. The trial court granted the motion to dismiss, finding that the dismissal of plaintiffs' negligence claim in *Hudson I*

constituted an adjudication on the merits and that *"res judicata* bars not only matters that were determined in the first action, but also matters that could have been determined in the original action." *Hudson*, 228 Ill. 2d at 466. The appellate court affirmed.

The central issue raised in *Hudson* was whether the dismissal of plaintiffs' negligence claim was a final adjudication on the merits for purposes of *res judicata*. As the plaintiff correctly notes, in *Hudson*, our supreme court relied extensively on *Rein* in affirming the appellate court and holding that the adjudication on the merits of the negligence count also constituted an adjudication on the merits as to the willful and wanton misconduct count. The court stated that *"Rein* thus stands for the proposition that a plaintiff who splits his claim by voluntarily dismissing part of an action after a final judgment has been entered on another part of the case subjects himself to a *res judicata* defense." *Hudson*, 228 Ill. 2d at 473. The court further stated that, "Once the holding of *Rein* is understood, the analysis in the present case becomes an unremarkable exercise," requiring a court to "simply insert the case names and the types of counts from this case into [a quoted] passage from *Rein"* to reach the conclusion that plaintiffs' claim was barred by the doctrine of *res judicata. Hudson*, 228 Ill. 2d at 473.

Plaintiff contends that because *Hudson* relied extensively on *Rein* and did not alter prior cases holding that all three requirements must be satisfied in order for *res judicata* to apply, the trial court in this case erred in stating that, "[a]lthough plaintiff argues that *Hudson* does not represent a shift from prior holdings, this court respectfully disagrees to the extent of the particular facts of this case. *** Significantly, the Supreme Court in *Hudson* implicitly rejected the analytical approach urged by the plaintiff in the current context." However, even if the trial court erred in its analysis of the *Hudson* holding in relation to prior *res judicata* jurisprudence, which is not clearly indicated by the language of the order, that is not grounds for reversal. What is before this court on review is the circuit court's judgment, not the reasoning employed. *Canada Life Assurance Co. v. Salwan*, 353 Ill. App. 3d 74, 79 (2004). The reasons given by the lower court for its decision or the findings on which a decision is based are not material if the judgement is correct. *Canada Life Assurance Co.*, 353 Ill. App. 3d at 79. As a reviewing court, this court may "sustain the decision of the circuit court on any grounds that are called for by the record regardless of whether *** the circuit court's reasoning was sound." *Canada Life Assurance Co.*, 353 Ill. App. 3d at 79. Therefore, this court must determine whether the trial court erred in finding that the *res judicata* requirements, and the identity of causes of action

requirement in particular, were met in this case, regardless of the reasoning it employed.

## C. Identity of Causes of Action

■ To determine whether there is an identity of causes of action for purposes of *res judicata*, Illinois courts have traditionally relied on two separate tests: the "same evidence test" and the "transactional test." *Rodgers v. St. Mary's Hospital*, 149 Ill. 2d 302, 311-12 (1992). However, in *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290 (1998), our supreme court adopted the more liberal "transactional test" and rejected the "same evidence test," holding that the latter test is not determinative of identity of cause of action. *River Park*, 184 Ill. 2d at 310-11. Under the transactional analysis, separate claims will be considered the same cause of action for *res judicata* purposes if they arise from a single group of operative facts, regardless of whether different theories of relief are asserted. *River Park*, 184 Ill. 2d at 311. The transactional test allows claims to be considered part of the same cause of action "even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." *River Park*, 184 Ill. 2d at 311. What constitutes a "transaction" should be "determined pragmatically," and a court should " 'give[ ] weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.' " *River Park*, 184 Ill. 2d at 312, quoting Restatement (Second) of Judgments §24, at 196 (1982).

■ Plaintiff contends that the trial court erred in finding an identity of causes of action because the underlying claims at issue in *Lane I* and *Lane II* were entirely different in terms of substance and time. Plaintiff argues that *Lane I* alleged a breach of duty to enforce and plead a 1994 settlement agreement while *Lane II* alleged a breach of duty to know and present the proper burden of proof in support of the antenuptial agreement. Plaintiff asserts that because the alleged duties owed by defendants in *Lane I* and *Lane II*, as well as the breach of those duties, differed, they did not arise out of the same set of operative facts.

Plaintiff also asserts that the facts underlying the two claims differ and argues that this further supports a finding that there was no identity of causes of action. Plaintiff acknowledges that our supreme court has adopted the transactional test over the same evidence test, but points out, correctly, that in *River Park*, our supreme court stated that "[u]nder the transactional analysis, the nature of the evidence needed to prove the claims at issue remains relevant for purposes of

demonstrating that the claims arise from the same group of operative facts." *River Park*, 184 Ill. 2d at 311. However, the court also said that "the transactional test permits claims to be considered part of the same cause of action even if there is not a substantial overlap of evidence, so long as they arise from the same transaction." *River Park*, 184 Ill. 2d at 311.

Because the causes of action in *Lane I* and *Lane II* arose from a single group of operative facts, namely, defendants' representation of plaintiff in his marital dissolution case, we find that the trial court did not err in finding an identity of causes of action. When plaintiff retained defendants, he informed them of the oral settlement agreement that he and his ex-wife agreed to and asked that they seek enforcement of that agreement. However, defendants did not plead the settlement agreement (which was the basis of plaintiff's negligence claim in *Lane I*), and instead proceeded to go to trial on the antenuptial agreement (which was the basis of plaintiff's negligence claims in counts II and III of *Lane I* and the single count in *Lane II*). Therefore, plaintiff's claims in both cases arose out of the defendants' representation in the marital dissolution case and in their decision to defend the case on the grounds that the antenuptial agreement was enforceable, rather than raising the existing oral settlement agreement. Consequently, we find that both cases arose out of the same core of operative facts, namely, defendants' representation of plaintiff in his marital dissolution case.

Plaintiff also asserts that there could not be an identity of causes of action because the events underlying the claims in *Lane I* and *Lane II* occurred at different points in time. In particular, he maintains that *Lane I* alleged that defendants were negligent in failing to present evidence during the Lake County marital dissolution proceeding regarding the 1994 oral settlement agreement between plaintiff and his ex-wife, while *Lane II* alleged that defendants were negligent in failing to adequately prepare him to testify during the hearing on his ex-wife's motion for declaratory relief. Therefore, plaintiff contends, because the claims were different in substance and in time, there was no identity of causes of action.

A similar argument was recently rejected by this court in *Doe v. Gleicher*, 393 Ill. App. 3d 31 (2009). In Gleicher, plaintiffs filed a nine-count complaint (*Doe I*) alleging, *inter alia*, breach of contract, breach of confidentiality and breach of fiduciary duty against defendants who disclosed plaintiffs' names to the media when providing information for a story on *in vitro* fertilization. The trial court dismissed six of the nine claims for failure to state a cause of action. Subsequently, plaintiffs voluntarily dismissed the complaint in *Doe I* and filed a new

complaint (*Doe II*) alleging medical negligence, breach of contract, invasion of privacy, false light invasion of privacy, conversion, and negligent spoliation of evidence. Defendants filed a motion to dismiss on *res judicata* grounds, which the trial court granted.

On appeal, plaintiffs asserted that *res judicata* could not apply to the conversion and negligent spoliation of evidence counts in *Doe II* because they were based on conduct that occurred after the order in *Doe I* was entered. Relying on *River Park, Inc.*, this court rejected that argument, stating that "[t]he passage of time is only one of the *River Park, Inc.* factors used to determine whether a group of facts constitute a transaction." *Gleicher*, 393 Ill. App. 3d at 38. This court found that the two claims arose out of the same operative facts because in *Doe I* and *Doe II* "plaintiffs sought redress, albeit under different causes of action, for what they deem[ed to be] inappropriate conduct with their embryos." *Gleicher*, 393 Ill. App. 3d at 38. Similarly, in this case, the fact that events underlying the causes of action in *Lane I* and *Lane II* occurred at different times is not sufficient to find that they did not arise out of the same set of operative facts. Plaintiff's claims in both causes of action arose out of the defendants' representation in the marital dissolution case. Consequently, we find that the trial court did not err in finding an identity of causes of action and holding that *Lane II* was barred by the doctrine of *res judicata*.

■ We also find that none of the exceptions to the rule against claim-splitting apply in this case. As our supreme court stated in *Hudson*, "the principle that *res judicata* prohibits a party from seeking relief on the basis of issues that could have been resolved in a previous action serves to prevent parties from splitting their claims into multiple actions." *Hudson*, 228 Ill. 2d at 471-72, citing *Rein* 172 Ill. 2d at 339-42. The court then noted that in *Rein*, it adopted the exceptions to claim-splitting set forth in section 26(1) of the Restatement (Second) of Judgments, stating that the rule against claim-splitting would not bar a second action if:

> " '(1) the parties have agreed in terms or in effect that plaintiff may split his claim or the defendant has acquiesced therein; (2) the court in the first action expressly reserved the plaintiff's right to maintain the second action; (3) the plaintiff was unable to obtain relief on his claim because of a restriction on the subject-matter jurisdiction of the court in the first action; (4) the judgment in the first action was plainly inconsistent with the equitable implementation of a statutory scheme; (5) the case involves a continuing or recurrent wrong; or (6) it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason.' " *Hudson*, 228 Ill. 2d at 472-73, quoting *Rein*, 172 Ill. 2d at 341.

■ An argument could be made that because plaintiff voluntarily dismissed counts II and III of *Lane I*, the trial court expressly reserved plaintiff's right to maintain a second action and, therefore, this case falls under the second exception. However, in *Rein*, our supreme court held that although the express language of section 2—1009 of the Illinois Code of Civil Procedure (735 ILCS 5/2—1009 (West 2000)) appears to give plaintiffs the absolute right to refile voluntarily dismissed common law counts within one year after the voluntary dismissal or within the remaining period of limitations, this section should not be read to automatically immunize a plaintiff against the bar of *res judicata* when the voluntarily dismissed counts are refiled. *Rein*, 172 Ill. 2d at 342-43.

Our supreme court reaffirmed that holding in *Hudson*, wherein the court stated that *Rein* "stands for the proposition that a plaintiff who splits his claims by voluntarily dismissing and refiling part of an action after a final judgment has been entered on another part of the case subjects himself to a *res judicata* defense." *Hudson*, 228 Ill. 2d at 473.[1] Because the dismissal of count I of plaintiff's *Lane I* complaint was a final order, pursuant to the holding in *Rein*, no exceptions to the rule against claim-splitting apply here.

■ Plaintiff next contends that the trial court implicitly acknowledged that there was no identity of causes of action when it dismissed count I but not counts II and III of *Lane I*. Furthermore, plaintiff asserts that the trial court's inclusion of Rule 304(a) language[2] in its order dismissing count I indicates that the trial court "[o]bviously *** agreed [that] the claims were distinctly different." We disagree. First, the motion to dismiss in *Lane I* raised different grounds as to count I (statute of limitations) than it did as to counts II and III (unclean hands). Second, the trial court in *Lane I* did not address the question

---

[1]In a dissenting opinion in *Hudson*, Justice Kilbride asserted that *"[r]es judicata* is not applicable to a voluntary dismissal, and a voluntary dismissal without prejudice is a recognized exception to the rule against claim-splitting precisely because a voluntary dismissal without prejudice is not a final judgment on the merits. *Rein*'s failure to apply the recognized exception has created untenable consequences. *** This court should recognize the error of its way and overrule *Rein*." *Hudson*, 228 Ill. 2d at 495 (Kilbride, J., dissenting, joined by Fitzgerald, J.).

[2]Supreme Court Rule 304(a) provides in part: "If multiple parties or multiple claims for relief are involved in an action, an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." 210 Ill. 2d R. 304.

of whether there was an identity of causes of action. Therefore, the court's inclusion of the Rule 304(a) language has no bearing on whether there was an identity of causes of action between *Lane I* and *Lane II*.

■ Lastly, plaintiff contends that by affirming the trial court, this court will be reducing the transactional test to a "common retention" test in all legal malpractice cases. In other words, plaintiff asserts, all claims arising out of a client's retention of a lawyer would be barred by *res judicata* even if the claims are years apart and involve different services provided by the defendant. Clearly, this is an overly broad assertion. The transactional test, as delineated in *River Park*, requires a court to weigh a variety of factors, including whether the facts of each cause of action are " 'related in time, space, origin, or motivation, [and] whether they form a convenient trial unit.' " *River Park*, 184 Ill. 2d at 312, quoting Restatement (Second) of Judgments §24, at 196 (1982). If, as in this case, the legal malpractice claims arise out of the same core of operative facts, a court will likely find that there is an identity of causes of action for purposes of *res judicata*. However, it is not difficult to imagine a scenario in which a client retains one lawyer for two distinct legal matters that would not satisfy the requirements of the transactional test.

## III. CONCLUSION

For the reasons set forth above, we affirm the order of the circuit court of Cook County dismissing plaintiff's cause of action based on the doctrine of *res judicata*.

Affirmed.

MURPHY, P.J., and COLEMAN, J., concur.