# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*Atherton v. Connecticut General Life Insurance Co.*, 2011 IL App (1st) 090727

---

| | |
|---|---|
| Appellate Court Caption | PHIL ATHERTON, Individually and as Natural Father and Next Friend of Brooke Atherton, a Minor, and TRACY ATHERTON, Individually and as Natural Mother of Brooke Atherton, a Minor, and BROOKE ATHERTON, a Minor, Plaintiffs-Appellants, v. CONNECTICUT GENERAL LIFE INSURANCE COMPANY, a/k/a Cigna Corporation; CIGNA HEALTH CARE OF ILLINOIS, INC.; INTERNATIONAL REHABILITATION ASSOCIATES, INC., d/b/a Intracorp; LUANN YORK and DANIEL OBER, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-09-0727 |
| Filed | August 22, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where plaintiffs succeeded in their action to require the State of Illinois Quality Care Health Plan to cover the hours of nursing care "medically necessary" for their disabled daughter and then sued the plan's administrators for common law fraud and a violation of the Consumer Fraud Act, the trial court erred in ruling that *res judicata* barred their action against the administrators, since a genuine issue of material fact existed as to whether the administrators' conduct was within the scope of their agency relationship with the plan for purposes of *res judicata*. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 06-L-6420; the Hon. James D. Egan, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded for further proceedings. |
| Counsel on Appeal | Michael A. Gross, of Sher Corwin LLC, and Burton Newman, both of St. Louis, Missouri, and Michael W. Rathsack, of Chicago, for appellants. |
| | Hinshaw & Culbertson, of Chicago, for appellees. |
| Panel | PRESIDING JUSTICE HALL delivered the judgment of the court, with opinion. |
| | Justice Rochford specially concurred in the judgment, with opinion. |
| | Justice Hoffman concurred in part and dissented in part in the judgment, with opinion. |

**OPINION**

¶ 1    Plaintiffs, Phil Atherton and Tracy Atherton, as parents and next friends of Brooke Atherton, appeal from a trial court order granting summary judgment in favor of defendants Connecticut General Life Insurance Company (CGLIC), Cigna Healthcare of Illinois, Inc. (Cigna), International Rehabilitation Associates, Inc. (Intracorp), Ms. LuAnn York, a registered nurse and caseworker employed by Intracorp, and Dr. Daniel Ober, also employed by Intracorp.

¶ 2    The trial court granted summary judgment for defendants based on the court's finding that plaintiffs' claims for common law and statutory fraud contained in their fourth amended complaint were barred by *res judicata*. The trial court also determined that summary judgment was warranted as to plaintiffs' claim for common law fraud on the ground that plaintiffs failed to establish the reliance element as required to sustain the claim.

¶ 3    The case arose after plaintiffs successfully brought an action for declaratory and injunctive relief in a Pulaski County court challenging a reduction in the number of hours of private in-home skilled nursing care provided to Brooke, who is severely mentally and physically disabled and in need of ongoing medical care. The Pulaski County court granted the plaintiffs' complaint for declaratory and injunctive relief requiring the State of Illinois Quality Care Health Plan (QCHP) to cover the hours of nursing care that Brooke's treating physician determined to be "medically necessary." [1]

---

[1] The Fifth District of the Appellate Court, in a Rule 23 order, affirmed the Pulaski County court ruling. *Atherton v. State of Illinois Quality Care Health Plan*, No. 5-06-0449 (May 15, 2008)

¶ 4 After successfully bringing the action for declaratory and injunctive relief against QCHP, plaintiffs filed a complaint in Cook County, followed by three amended complaints, against the current defendants alleging common law fraud and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1994)). Plaintiffs alleged that the defendants, as the administrators of the QCHP plan, committed common law fraud and statutory fraud by engaging in an orchestrated pattern and scheme of misrepresentation, omission, and concealment to reduce the number of hours of private in-home skilled nursing care Brooke received, even though her treating physician insisted that the number of hours previously approved under the QCHP plan was "medically necessary," and even though the supervisor of skilled nursing services documented that such care was "medically necessary." Plaintiffs sought compensatory and punitive damages, as well as attorneys fees.

¶ 5 The trial court granted defendants' motion for summary judgment, finding that the Pulaski County judgment had *res judicata* effect on the claims in plaintiffs' fourth amended complaint. The trial court also determined that plaintiffs failed to adequately plead the reliance element as required to sustain their claim for common law fraud.

¶ 6 Plaintiffs now appeal from the trial court's order granting summary judgment in favor of defendants. For the reasons that follow, we reverse and remand for further proceedings.

¶ 7 ANALYSIS

¶ 8 Defendants moved for summary judgment on grounds of *res judicata*. We review the grant of summary judgment under a *de novo* standard of review. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1992). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmovant, show that no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004); *Gawryk v. Firemen's Annuity & Benefit Fund of Chicago*, 356 Ill. App. 3d 38, 41, 824 N.E.2d 1102 (2005).

¶ 9 *Res judicata* is an equitable doctrine established to prevent the multiplicity of lawsuits between the same parties, involving the same facts and issues. *Murneigh v. Gainer*, 177 Ill. 2d 287, 685 N.E.2d 1357 (1997). Under the doctrine of *res judicata*, a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action. *Lane v. Kalcheim*, 394 Ill. App. 3d 324, 329, 915 N.E.2d 93 (2009). *Res judicata* extends not only to those claims actually decided in the first action, but also to those issues that could have been decided in that action. *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 294, 602 N.E.2d 820 (1992).

¶ 10 In order to invoke this doctrine, the following elements must be shown: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) an identity of

(unpublished order under Supreme Court Rule 23).

causes of action; and (3) an identity of the parties or their privies. *Kalcheim*, 394 Ill. App. 3d at 329-30. The party seeking to invoke the defense bears the burden of demonstrating that it applies. *Cload v. West*, 328 Ill. App. 3d 946, 950, 767 N.E.2d 486 (2002); *American National Bank & Trust Co. of Chicago v. Village of Libertyville*, 269 Ill. App. 3d 400, 404, 645 N.E.2d 1013 (1995).

¶ 11    Defendants here have failed to establish the third element of *res judicata*, namely, identity or privity between the parties. "With respect to the doctrine of *res judicata*, there is no generally prevailing definition of 'privity' which can automatically be applied to all cases; that determination requires a careful examination into the circumstances of each case." *Purmal v. Robert N. Wadington & Associates*, 354 Ill. App. 3d 715, 722, 820 N.E.2d 86 (2004) (citing 23A Ill. L. & Prac. *Judgments* § 390 (1979)).

¶ 12    "Privity is said to exist between parties who adequately represent the same legal interests." *Diversified Financial Systems, Inc. v. Boyd*, 286 Ill. App. 3d 911, 916, 678 N.E.2d 308 (1997). Privity expresses " 'the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties.' " *Progressive Land Developers, Inc.*, 151 Ill. 2d at 296 (quoting Restatement of Judgments § 83 cmt. a (1942)).

¶ 13    Defendants contend they were in privity with QCHP in the Pulaski County suit through their agency relationship with QCHP. Defendants maintain that they were in an agency relationship with QCHP in regard to coverage determinations CGLIC and Intracorp made with respect to Brooke's nursing care under the QCHP plan. Defendants claim that through this agency relationship they were in privity with QCHP in the Pulaski County suit for purposes of *res judicata*. We must disagree.

¶ 14    Courts in other jurisdictions have determined that for purposes of *res judicata*, agents and principals are not ordinarily in privity with each other. See *Major v. Inner City Property Management, Inc.*, 653 A.2d 379, 381 (D.D.C. 1995); *Advantage Health Plan, Inc. v. Knight*, 139 F. Supp. 2d 108, 111 (D.D.C. 2001). "This limitation on *res judicata* in the context of the principal-agent relationship is a corollary of the rule that a principal is not liable for an agent's tortious conduct unless that conduct is within the scope of the agency." *Major*, 653 A.2d at 381 n.5. "Thus a decision on the merits in an action against the principal is *res judicata* in a later action against the agent only 'if the prior action concerned a matter within the agency.' " *Major*, 653 A.2d at 381 (quoting *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 637 F. Supp. 1333, 1341 (N.D. Ill. 1986)).

¶ 15    In this case, the plaintiffs' claims against defendants are premised on alleged fraudulent and deceptive conduct which, plaintiffs argue, falls outside the scope of the agency relationship. "The scope of an agent's purported authority is a question of fact ***." *Career Concepts, Inc. v. Synergy, Inc.*, 372 Ill. App. 3d 395, 404, 865 N.E.2d 385 (2007). Moreover, in the context of *res judicata*, the issue as to whether privity exists is generally a question of fact. See, *e.g.*, *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008).

¶ 16    Therefore, viewing the facts in the light most favorable to plaintiffs, as we must at the summary judgment stage, we believe that the record establishes a genuine issue of material

fact as to whether the defendants' conduct in reducing the number of hours of private in-home skilled nursing care Brooke received was within the scope of its agency relationship.

¶ 17     In sum, a genuine issue of material fact exists as to whether defendants were in privity with QCHP in the earlier Pulaski County suit, precluding summary judgment on the basis of *res judicata*. Because all three elements of the doctrine must be satisfied before *res judicata* can be applied to bar a subsequent action, we need not consider the remaining two elements. See *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390, 757 N.E.2d 471 (2001) (in order to apply the doctrine of *res judicata* all three elements must be satisfied).

¶ 18     We also find that the trial court erred in concluding, as a matter of law, that the plaintiffs would be unable to prove the reliance element of their common law fraud claim. Common law fraud requires: (1) a false statement of material fact; (2) knowledge that the statement was false; (3) intent that the statement induced another to act; (4) reasonable reliance upon the truth of the statement; and (5) damages resulting from reliance on the statement. *Lagen v. Balcor Co.*, 274 Ill. App. 3d 11, 17, 653 N.E.2d 968 (1995). The party alleging fraud must show that it justifiably relied on another's statements. *D.S.A. Finance Corp. v. County of Cook*, 345 Ill. App. 3d 554, 560, 801 N.E.2d 1075 (2003).

¶ 19     The trial court reasoned and concluded that the plaintiffs would be unable to show that they justifiably relied on the defendants' alleged misrepresentations because they openly disagreed with the defendants' explanations as to why Brooke's nursing care benefits should be reduced. However, the fact that plaintiffs disagreed with the defendants' coverage decisions does not dispose of plaintiffs' ability to show that they justifiably relied on the defendants' fraudulent misrepresentation. See, *e.g.*, *Allstate Insurance Co. v. St. Anthony's Spine & Joint Institute, P.C.*, 691 F. Supp. 2d 772, 794-95 (N.D. Ill. 2010) (finding that material issues of fact existed as to whether employees of insurance company justifiably relied on false and misleading medical reports and documents, even though employees admitted they believed doctor was engaged in fraudulent activity).

¶ 20     In the instant case, plaintiffs alleged that the defendants, under cover of being QCHP's administrators responsible for making honest decisions on the basis of thorough medical evaluations, instead concealed their fraudulent conduct in explanation-of-benefit letters and other protocols thereby fooling plaintiffs with respect to legitimacy. In our view, these allegations are sufficient to preclude summary judgment at this time.

¶ 21     Finally, we hold that under the circumstances in this case, the determination as to whether any damages were proximately caused by defendants' alleged fraudulent conduct is a question of fact unsuited for summary judgment. See, *e.g.*, *Diehl v. Polo Cooperative Ass'n*, 328 Ill. App. 3d 576, 582, 766 N.E.2d 317 (2002) (proximate cause is generally a question of fact).

¶ 22     For the foregoing reasons, we reverse the judgment of the circuit court and remand for further proceedings.

¶ 23     Reversed and remanded for further proceedings.

¶ 24    JUSTICE ROCHFORD, specially concurring:

¶ 25    I concur in Presiding Justice Hall's opinion, but write separately to indicate an additional basis grounded in Illinois law for holding that a genuine issue of material fact exists as to whether defendants were in privity with the prior defendant in the earlier suit.

¶ 26    Defendants advance an argument that privity exists because they have "an agency relationship with QCHP." Defendants rely on *Bagnola v. SmithKline Beecham Clinical Laboratories*, 333 Ill. App. 3d 711 (2002), in which the Police Board of the City of Chicago (the Board) ordered the discharge of a police officer based on positive drug tests. *Bagnola*, 333 Ill. App. 3d at 713. The circuit court affirmed on administrative review. *Bagnola*, 333 Ill. App. 3d at 713. Meanwhile, the officer sued the City of Chicago and SBCL (the lab that conducted the urinalysis), alleging they committed spoliation of evidence by destroying the urine samples. *Bagnola*, 333 Ill. App. 3d at 712-13. The circuit court granted summary judgment in favor of the city and SBCL. *Bagnola*, 333 Ill. App. 3d at 712. The appellate court affirmed, holding that, pursuant to the doctrines of *res judicata* and collateral estoppel, the judgment in the first proceeding barred the officer from asserting the spoliation claim against the city and SBCL. *Bagnola*, 333 Ill. App. 3d at 726. *Bagnola* is not persuasive, though, because the parties there did not contest that the city and SBCL were in privity. *Bagnola*, 333 Ill. App. 3d at 718.

¶ 27    Privity generally exists when parties adequately represent the same legal interest. *People ex rel. Burris v. Progressive Land Developers, Inc.*, 151 Ill. 2d 285, 296 (1992); *Mount Mansfield Insurance Group, Inc. v. American International Group, Inc.*, 372 Ill. App. 3d 388, 393 (2007). In determining whether privity exists, the identity of the interest controls, not the nominal identity of the parties. *Progressive Land Developers, Inc.*, 151 Ill. 2d at 296.

¶ 28    The term "privity" is not a precise one, and no generally prevailing definition can automatically be applied to all cases. *Yorulmazoglu v. Lake Forest Hospital*, 359 Ill. App. 3d 554, 559 (2005). Presiding Justice Hall cites to a definition found in the Restatement of Judgments:

> "Privity is a word which expresses the idea that as to certain matters and in certain circumstances persons who are not parties to an action but who are connected with it in their interests are affected by the judgment with reference to interests involved in the action, as if they were parties." Restatement of Judgments § 83 cmt. a (1942).

¶ 29    This definition has been cited in other appellate court cases. See, *e.g.*, *State Farm Fire & Casualty Co. v. John J. Rickhoff Sheet Metal Co.*, 394 Ill. App. 3d 548, 559 (2009). However, the appellate court recently has acknowledged that "the Restatement (Second) of Judgments has changed the landscape of this point of law significantly. [Citations.] The Restatement (Second) of Judgments offers the most useful rationale for determining whether privity exists here." *State Farm Fire & Casualty Co.*, 394 Ill. App. 3d at 559. The Restatement (Second) of Judgments explains that:

> " 'privity' refers to a cluster of relationships, [citation], under which the preclusive effects of a judgment extend beyond a party to the original action and apply to persons having specified relationships to that party." Restatement (Second) of

Judgments, Introduction, at 1 (1982).

¶ 30 The Restatement (Second) of Judgments further explains that there are three general categories of relationships that may establish privity. Restatement (Second) of Judgments § 75 cmt. a (1982); see also *Diversified Financial Systems, Inc. v. Boyd*, 286 Ill. App. 3d 911, 916 (1997) (also discussing the Restatement (Second) of Judgments). In pertinent part, the second category of relationships includes "the array of substantive legal relationships," referred to in sections 45 through 61 of the Restatement (Second) of Judgments, in which one of the parties to the relationship is "treated as having the capacity to bind the other to a judgment in an action to which the latter is not a party." Restatement (Second) of Judgments § 75 cmt. a (1982). These relationships include, *inter alia*, persons who are vicariously responsible for one another. See the Restatement (Second) of Judgments § 51 (1982). One of the relationships creating vicarious responsibility is that of "principal and agent for matters *within the scope of the agency relationship*." (Emphasis added.) Restatement (Second) of Judgments § 51 cmt. a (1982).

¶ 31 In the present case, the defendants here were in a purported agency relationship with defendant in the earlier suit. However, pursuant to the Restatement (Second) of Judgments (cited with approval by *State Farm Fire & Casualty Co.*, 394 Ill. App. 3d at 561) there was no privity unless defendants' allegedly fraudulent and deceptive conduct here was within the scope of their agency relationship. This holding is in accord with the persuasive, out-of-state cases cited by Presiding Justice Hall. As correctly noted by Presiding Justice Hall, the scope of an agent's purported authority is a question of fact (see *Career Concepts, Inc. v. Synergy, Inc.*, 372 Ill. App. 3d 395, 404 (2007)) and the record here indicates a genuine issue of material fact exists as to whether defendants' conduct was within the scope of their agency relationship. Accordingly, I concur in Presiding Justice Hall's decision reversing the judgment of the circuit court and remanding for further proceedings.

¶ 32 JUSTICE HOFFMAN, concurring in part and dissenting in part:

¶ 33 I concur in that part of Presiding Justice Hall's opinion reversing the summary judgment granted to the defendants on the basis that the plaintiffs' claims for common law fraud and violations of the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2006)) are barred by the doctrine of *res judicata*. However, I dissent from the reversal of that portion of the circuit court's order granting summary judgment to the defendants on the plaintiffs common law fraud claim based upon the plaintiffs' inability to prove that they relied upon any of the defendants' alleged misrepresentations.

¶ 34 As the defendants correctly argue, recovery under the theory of common law fraud requires proof of "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Doe v. Dilling*, 228 Ill. 2d 324, 342-43, 888 N.E.2d 24 (2008). In this case, the evidentiary material of record establishes unequivocally that the plaintiffs disagreed with every decision that the defendants made with respect to the nursing care needs of Brook

Atherton. Put another way, they never relied on any of the defendants' representations as to those nursing needs.

¶ 35 "[A] critical element that must be established by a plaintiff in a fraudulent-misrepresentation claim is that he or she acted in justifiable reliance on the truth of the allegedly fraudulent statement." *Doe*, 228 Ill. 2d at 351. The record establishes that the plaintiffs could never establish this element of their common law fraud claim. As to this claim, therefore, the defendants were entitled to judgment as a matter of law.

¶ 36 For these reasons, I would reverse the summary judgment granted to the defendants on the basis that the plaintiffs' claims are barred by the doctrine of *res judicata*, affirm the summary judgment granted to the defendants on the plaintiffs' common law fraud claim on the basis that the plaintiffs cannot establish that they acted in justifiable reliance on the truth of the defendants' statements, and remand this matter to the circuit court for further proceedings on the plaintiffs' Consumer Fraud Act claims.